**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2762
_____

JUAN CHEN,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A095-710-240)
Agency: BIA
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 19, 2024
_____

Before:  HARDIMAN, PHIPPS, and SMITH, *Circuit Judges*.

(Filed: May 24, 2024)
_____

OPINION*
_____

PHIPPS, *Circuit Judge*.

A citizen of the People's Republic of China who entered the country in 2005 and

was ordered removed in 2010 sought relief from that final order of removal in 2021.  She

did so through two motions before the Board of Immigration Appeals: a motion to reopen

and a motion to *sua sponte* reopen – both requesting cancellation of removal.  The BIA

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

denied both motions, and through a timely petition, the Chinese national sought review of those rulings. For the reasons below, we will deny in part and dismiss in part her petition.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In May 2005, Juan Chen, a Chinese national, entered the country at Los Angeles International Airport, presented herself for inspection, and applied for admission, but she did not have proper entry documents. The Department of Homeland Security granted her parole and later charged her with removability through a document labeled as a 'Notice to Appear,' which is often abbreviated as 'NTA.' Her NTA, however, did not state the date and time of her hearing; that information was provided by a subsequent Notice of Hearing.

For the next three years, Chen remained in the country while the removal proceedings were pending. At a hearing in New York, Chen conceded removability but sought several forms of relief from removal: asylum, statutory withholding of removal, and relief under the Convention Against Torture. About two years later, while her immigration proceedings were pending, she married another Chinese national, whom DHS also sought to remove.

Following a 2008 hearing, after the proceedings were transferred to New Jersey and consolidated with her husband's claims for relief from removal, an Immigration Judge denied all relief to the couple. Without success on administrative appeal, Chen moved to reopen the proceedings. Although the BIA denied that motion, it recognized that service of its prior decision had not been perfected, so it reissued that decision on April 27, 2010. Chen then unsuccessfully petitioned for review of the agency's denial of relief from removal. *See Shan En Zhang v. Att'y Gen.*, 423 F. App'x 243, 249 (3d Cir. 2011) (per curiam).

2

In 2012 and again in 2018, Chen submitted additional, separate motions to reopen. The BIA denied both motions, and those rulings were upheld by this Court. *See Shan En Zhang v. Att'y Gen.*, 548 F. App'x 765, 767 (3d Cir. 2013); Clerk Order, *Juan Chen v. Att'y Gen.*, No. 19-2699 (3d Cir. Oct. 18, 2019) (dismissing petition for failure to file a brief).

In July 2021, Chen filed a fourth motion to reopen, and she alternatively moved to have the BIA reopen her proceedings *sua sponte*. In her motion to reopen, Chen argued that she satisfied the four prerequisites for cancellation of removal, which are necessary but not sufficient conditions for that form of relief. *See* 8 U.S.C. § 1229b(b)(1) (setting forth the prerequisites), (e)(1) (setting an annual aggregate limit of 4,000 non-citizens who may receive an adjustment of status). For the first of those prerequisites – ten years' continuous presence in the country before the request for cancellation, *see id.* § 1229b(b)(1)(A) – Chen argued that her period of continuous presence was not terminated by her receipt of the NTA as it normally would be under the stop-time rule, *see id.* § 1229b(d)(1). According to Chen, the NTA that she received could not trigger the stop-time rule in light of a Supreme Court decision from April 29, 2021. That case, *Niz-Chavez v. Garland*, 593 U.S. 155 (2021), held that to stop the period of continuous presence, an NTA must specify the time and date of the hearing – and her NTA did not. *Id.* at 160–61. Based on that change of law, Chen argued that her motion to reopen – although her fourth, submitted eleven years after her final order of removal but within 90 days of the *Niz-Chavez* decision – should not be number- or time-barred under principles of equitable tolling. Alternatively, Chen moved the BIA to reopen her immigration proceedings *sua sponte*, contending that *Niz-Chavez* was a compellingly fundamental and relevant change in the law that warrants reopening.

The BIA denied both motions.  It identified several grounds for denying Chen's motion to reopen.  First, it was number barred because it was her fourth motion, and she is permitted only one, *see* 8 U.S.C. § 1229a(c)(7)(A).  Second, it was time-barred because it was filed more than 90 days after the April 2010 final order of removal, *see id.* § 1229a(c)(7)(C)(i) ("[T]he motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal.").  Third, it was not subject to equitable tolling because this Court had reached the same result as *Niz-Chavez* over a year earlier, on February 26, 2020, in *Guadalupe v. Attorney General*, 951 F.3d 161, 166 (3d Cir. 2020), and Chen did not demonstrate why she did not move to reopen based on that decision.  Furthermore, the BIA determined that even if her motion were timely, Chen would not be eligible for cancellation of removal because the April 2010 final order of removal was issued before she had ten years' continuous presence.  The BIA also denied Chen's alternative motion for *sua sponte* reopening because she did not present an exceptional situation.

Through a timely petition challenging those rulings, Chen invoked this Court's jurisdiction.  *See* 8 U.S.C. § 1252(a)(1).

## DISCUSSION

### A.    The BIA Did Not Abuse Its Discretion in Denying Chen's Motion to Reopen.

To succeed on abuse-of-discretion review of the denial of her motion to reopen, *see Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004), Chen must prevail on four issues.

Three of those present novel questions for this Court.  First, Chen's petition hinges on the number bar for motions to reopen being subject to equitable tolling.  *See* 8 U.S.C. § 1229a(c)(7)(A) ("An alien may file one motion to reopen [immigration] proceedings.").  But this Court has not addressed that issue precedentially.  *See Luntungan v. Att'y Gen.*,

4

449 F.3d 551, 557 (3d Cir. 2006) (per curiam) ("We have not issued a precedential opinion deciding whether *numerical* limits on motions to reopen may be equitably tolled."); *cf. Jones v. Hendrix*, 599 U.S. 465, 491 (2023) (declining to create an equitable exception to the numerical limitations on second or successive petitions under the Antiterrorism and Effective Death Penalty Act of 1996). Second, for Chen to avoid the denial of her motion on timeliness grounds, she must succeed on her theory of equitable tolling, which is premised on the change in law effectuated by *Niz-Chavez*. *See* 8 U.S.C. § 1229a(c)(7)(C)(i). But this Court has not addressed the issue of whether a change in law can justify equitable tolling. Third, Chen must establish that the BIA erred in holding that a final order of removal terminates her continuous presence for purposes of cancellation of removal. Three other Circuits and the BIA itself have addressed that issue, but this Court has not. *See Parada v. Garland*, 48 F.4th 374, 377 (5th Cir. 2022) (per curiam) (holding that a final order of removal does not terminate continuous presence for cancellation-of-removal purposes); *Estrada-Cardona v. Garland*, 44 F.4th 1275, 1286 (10th Cir. 2022) (same); *Quebrado Cantor v. Garland*, 17 F.4th 869, 873 (9th Cir. 2021) (same); *In re Chen*, 28 I. & N. Dec. 676, 681 (B.I.A. 2023) (same).

The fourth issue, however, is not novel. Even supposing that Chen could prevail on the other three, her 2021 motion to reopen would still have to meet both elements of equitable tolling. For that to occur, Chen would have to show, *inter alia*, that she had been pursuing her rights diligently. *See Holland v. Florida*, 560 U.S. 631, 649 (2010). And that would require an explanation of why she did not move to reopen after this Court's ruling in *Guadalupe*, which reached the same outcome as *Niz-Chavez* – but fourteen months earlier. Yet Chen offers no explanation. Thus, the BIA's denial of Chen's motion to reopen based on its conclusion that she failed to diligently pursue her rights was a sufficient reason

and not an abuse of discretion, rendering unnecessary any consideration of the other three issues of first impression.

### B. The Court Lacks Jurisdiction to Review the BIA's Refusal to *Sua Sponte* Reopen Chen's Removal Proceedings.

Chen challenges the BIA's decision not to *sua sponte* reopen her proceedings. Because such a ruling is within the BIA's sole discretion, *see* 8 C.F.R. § 1003.2(a), it is not generally subject to judicial review, *see* 8 U.S.C. § 1252(a)(2)(B); *Pllumi v. Att'y Gen.*, 642 F.3d 155, 159 (3d Cir. 2011) (holding that courts generally lack jurisdiction to review the BIA's decision not to *sua sponte* reopen proceedings because such decisions "are committed to the unfettered discretion of the BIA"). However, this Court has recognized two limited circumstances in which a court has jurisdiction to review such orders – and Chen contends that both apply.

The first exception to non-reviewability occurs when a discretionary ruling of the BIA allegedly rests on an incorrect legal premise. *See Sang Goo Park v. Att'y Gen.*, 846 F.3d 645, 651 (3d Cir. 2017) (citing *Pllumi*, 642 F.3d at 160). In that situation, this Court may review that legal question, and if the legal premise is indeed incorrect, remand the case to the agency to exercise its discretion with a correct understanding of the law. *See id*. Chen argues that the BIA erred by not considering the legal question of whether she had stated a *prima facie* case for cancellation of removal. But the BIA did not need to resolve that issue because as part of its analysis, it assumed that Chen was eligible for cancellation, and then, in the exercise of its discretion, concluded that she did not present an exceptional situation to warrant *sua sponte* reopening. *See Patel v. Garland*, 596 U.S. 328, 332 (2022) ("If the judge decides that denial [of relief from removal] would be appropriate regardless of eligibility, the judge need not address eligibility at all.").

6

The second exception allows judicial review of the BIA's deviation from its "settled course" if it "has limited its discretion via a policy, rule, settled course of adjudication, or by some other method." *Sang Goo Park*, 846 F.3d at 653. Chen argues that her case fits within this exception because the BIA has a settled course of reopening proceedings that present exceptional circumstances, and that *Niz-Chavez* amounts to a fundamental change in law that justifies *sua sponte* reopening. But the assessment of whether any particular "change in law is sufficiently compelling that the extraordinary intervention of [the BIA's] sua sponte authority is warranted," remains a discretionary determination made by the BIA, *In re G-D-*, 22 I. & N. Dec. 1132, 1135 (B.I.A. 1999), and Chen offers no evidence that the BIA previously established a settled course of reopening with respect to either *Niz-Chavez* or *Guadalupe*. Moreover, the BIA's change-in-law policy applies when the outcome of the case "turn[s] on the cited change in law," *id.*, and nothing about *Niz-Chavez* or *Guadalupe* compels cancellation of removal. At most, non-citizens who received defective NTAs may rely on those two cases to meet the continuous-presence requirement. But that is not outcome determinative: even when *all* of the prerequisites for cancellation of removal are satisfied, the BIA still has to exercise its discretion to determine whether to use one of the 4,000 annual adjustment-of-status slots on a particular applicant. *See* 8 U.S.C. § 1229b(e)(1).

Thus, the BIA's decision to deny the motion for *sua sponte* reopening was the result of its exercise of discretion, outside of either recognized exception, so this Court lacks jurisdiction to review that ruling. *See id.* § 1252(a)(2)(B); *Pllumi*, 642 F.3d at 159.

\* \* \*

For these reasons, we will deny the petition with respect to the motion to reopen and dismiss the petition with respect to the motion for *sua sponte* reopening.

7